NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
29037
21-NOV-2011
08:23 AM

NO. 29037

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


DEL MONTE FRESH PRODUCE (HAWAII), INC.;
EDWARD C. LITTLETON; STACIE SASAGAWA; TIM HO;
DIXON SUZUKI, and DEL MONTE FRESH PRODUCE COMPANY,
Appellants-Appellants,
v.
INTERNATIONAL LONGSHORE AND WAREHOUSE UNION,
LOCAL 142, AFL-CIO, (2006-074),
Union/Appellee-Appellee,
and
HAWAII LABOR RELATIONS BOARD,
Appellee-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-0708)


SUMMARY DISPOSITION ORDER
(By:  Nakamura, C.J., Foley and Leonard, JJ.)

Appellants-Appellants Del Monte Fresh Produce (Hawaii),
Inc. (DMH); Edward C. Littleton; Stacie Sasagawa; Tim Ho; Dixon
Suzuki; and Del Monte Fresh Produce Company (collectively, Del
Monte) appeal from the Judgment filed on February 1, 2008 in the
Circuit Court of the First Circuit[1] (circuit court).  Pursuant to
the February 1, 2008 "Order Affirming Hawaii Labor Relations
Board Decision No. 464 Dated March 21, 2007," the circuit court

---

[1]  The Honorable Sabrina S. McKenna presided.

entered judgment in favor of Union/Appellee-Appellee International Longshore and Warehouse Union, Local 142, AFL-CIO (ILWU or Union) and Appellee-Appellee Hawaii Labor Relations Board (HLRB) and against Del Monte.

On appeal, Del Monte contends:

(1)    HLRB applied the improper standard for judging Del Monte's December 6, 2006 Motion to Disqualify or for Recusal of Board Member (Disqualification Motion), HLRB erred in denying the Disqualification Motion on the merits, and the circuit court erred in affirming HLRB's ruling;

(2)    HLRB erred in its definition of effects bargaining, and the circuit court erred in affirming HLRB's ruling; and

(3)    HLRB erred in finding that Del Monte failed to bargain in good faith, and the circuit court erred in affirming HLRB's ruling.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude that Del Monte's appeal is without merit.

(1)    Del Monte contends HLRB erred by failing to apply the standard of whether there was any "appearance of impropriety" in denying the Disqualification Motion and the circuit court erred in affirming HLRB's ruling.  Del Monte lists four specific instances in which, Del Monte argues, HLRB panel Chair Brian Nakamura (Chair Nakamura) displayed an "appearance of impropriety."  Del Monte argues that Chair Nakamura displayed an appearance of impropriety by:

(a)    displaying sympathy for ILWU -- Chair Nakamura described DMH employees as "people who were extraordinarily proud of doing their job to the best of their ability" and as "good people, loyal workers who have devoted half their life to the company";

(b) speculating about the hardship of the employees -- Chair Nakamura speculated that employees had been misled by DMH into purchasing cars, having babies, and getting married;

(c) characterizing the issue as ethical, not legal -- Chair Nakamura stated that fairness is "the bottom line in this case ethically"; and

(d) getting emotional -- Chair Nakamura apologized for "getting emotional in my line of questioning" and stated that "[i]n real life, when I use the court interrogation tone of voice, my wife slaps me directly. I'd like to ask you to do so if I ever do so again."

The proper test for disqualifying an administrative adjudicator for bias or impartiality is whether "the circumstances fairly give rise to an appearance of impropriety and reasonably cast suspicion on [the adjudicator's] impartiality." Sussel v. City & County of Honolulu Civil Service Comm'n, 71 Haw. 101, 109, 784 P.2d 867, 871 (1989).

> The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired. Therefore, the test for disqualification due to the appearance of impropriety is an objective one, based not on the beliefs of the petitioner or the judge, but on the assessment of a reasonable impartial onlooker apprised of all the facts.

Office of Disciplinary Counsel v. Au, 107 Hawai'i 327, 338, 113 P.3d 203, 214 (2005) (internal quotation marks, citations, and brackets in original omitted). In reasoning, adopted by this court in State v. Lioen, 106 Hawai'i 123, 129, 102 P.3d 367, 373 (App. 2004), the United States Supreme Court held that

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

3

Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994).

HLRB and the circuit court did not err because Chair Nakamura's comments did not rise to the level of displaying deep-seated favoritism or antagonism, give rise to an appearance of impropriety, or reasonably cast suspicion on his impartiality.

(2) Del Monte contends that HLRB's March 21, 2007 Findings of Fact, Conclusions of Law, and Order (the HLRB Order) is affected by an error of law because it sets forth per se requirements for effects bargaining that are contrary to labor law principles and the circuit court erred in affirming HLRB's ruling. Del Monte argues that six of the eight factors in the HLRB Order are not mandatory requirements of effects bargaining and HLRB erred in listing them as per se requirements.

It is well-settled that decisions of an administrative agency are afforded a degree of deference on appeal. "[I]n deference to the administrative agency's expertise and experience in its particular field, the courts should not substitute their own judgment for that of the administrative agency where mixed questions of fact and law are presented." Camara v. Agsalud, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984). "Whether a party failed to bargain in good faith is a mixed question of fact and law, as it consists of the application of the legal standard under HRS § 377-6(4) to the factual conduct of the parties." Del Monte Fresh Produce (Hawaii) v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO, 112 Hawai'i 489, 500, 146 P.3d 1066, 1077 (2006) (Del Monte I) (citation omitted).

The standard adopted by HLRB to determine whether an employer has met its statutory duty to bargain in good faith is "whether the totality of the employer's conduct evinces a present intention to find a basis for agreement and a sincere effort to reach a common ground." Id. (internal quotation marks, citation, and brackets omitted).

In finding that Del Monte engaged in bad faith bargaining, HLRB held that

> rational foundational prerequisites of information which must be available, or the subjects of open good faith exchange, in the course of effects bargaining accompanying a closure should at least include: 1) why the closure is taking place; 2) what, if anything, the Union, employees or the employer could reasonably do to delay, forestall the closure or mitigate the detrimental effects of the closure; 3) the reasons for positions taken in developing, modifying, or rejecting offers of [sic] counter offers; 4) the resources which might be available to effect compromise; 5) the possible retention, redeployment or liquidation of effected human or material resources; 6) what is necessary to establish an open and meaningful avenue of communication with decision makers; 7) steps that can be reasonably taken to mitigate the detrimental effects of the pending unemployment to employees, their dependent families or their community; and 8) the precise timing of the closure.

(Emphasis added.) Del Monte argues that HLRB erred in making these eight factors per se requirements for effects bargaining because doing so is contrary to principles of labor law.

Del Monte's argument is an inaccurate characterization of HLRB's holding. Prior to outlining the eight above factors, HLRB concluded that "based on its understanding of the totality of the disclosed circumstances[,] . . . DEL MONTE failed to bargain in good faith in violation of HRS § 377-6(4)." (Emphasis added.) HLRB, after listing six points of conduct that evidenced bad faith bargaining by Del Monte, stated:

> [HLRB] does not conclude that any of the factors discussed above, standing alone is necessarily dispositive of this issue. But taken together, as representative of a totality of the circumstances presented before us the [HLRB] must conclude that the totality of an employer's conduct during the first phase of bargaining does not evince "a present intention to find a basis . . . for agreement and a sincere effort to reach a common ground." [Del Monte I, 112 Hawai'i at 500, 146 P.3d at 1077].

HLRB properly considered the "totality of the circumstances" in determining that Del Monte engaged in bad faith bargaining. See Del Monte I, 112 Hawai'i at 500-502, 146 P.3d at 1077-79.

(3) Del Monte contends it was erroneous for HLRB to find that Del Monte bargained in bad faith and for the circuit court to affirm HLRB's ruling. Del Monte challenges the six

5

points of conduct that HRLB cited as evidence of Del Monte's bad faith.

(a) Del Monte argues that HLRB clearly erred in finding that Del Monte failed to inform ILWU about the company's declining profits and productivity. HLRB found that "[t]he Union was advised of only competitive pricing and lease expiration as the initial reasons for closure; profitability and production concerns, much less continuing and exacerbated profitability and production concerns were never transmitted to the Union. " Del Monte does not point to any evidence in the record to indicate that it did in fact inform ILWU about its loss in profits. Del Monte argues that because there is no evidence that the original decision to shut down was based on the loss in profits, the loss of profits was not relevant. To the contrary, DMH's loss in profits was a major reason in the decision to accelerate the shut down. Even if the initial decision was not influenced by a loss in profits, the loss in profits did cause the acceleration and was information highly relevant to effects bargaining.

(b) Del Monte argues that HLRB erred in finding that ILWU was injured by Del Monte's lack of disclosure about the loss in profits. HLRB held that because of the lack of information from Del Monte, "the Union had no reason or ability to modify, sweeten or invent new proposals in order to possibly extend the life of the enterprise and its members' jobs. Any hope or possibility of creative collaboration was lost within the confines of spreadsheets which were totally unavailable." Del Monte reasons that because ILWU never sought decision bargaining, Del Monte had no obligation to bargain about the timing of the closure. Del Monte's argument that ILWU was not prejudiced by the lack of information because decision bargaining was not mandatory is without merit. DMH's continuing loss in profits concerned the effects of its decision to close because the closure date was altered due to the loss in profits. The National Labor Relations Board recently held:

> The extent of effects bargaining will vary depending on circumstances. In *Litton Business Systems*, 286 NLRB 817, 819-20 (1987), the employer was not obligated to bargain about an economically motivated decision to change its printing processes, but was obligated to explore alternatives to layoff, including retraining, transferring employees, etc., to reduce the scope of the layoffs. In *First National Maintenance [v. N.L.R.B.*, 452 U.S. 666, 677 n.15 (1981)], the employer's termination of a contract with a customer resulted in the elimination of jobs, and thus the only meaningful effect to bargain was severance pay. In *Holmes & Narver*, 309 NLRB 146, 147 (1992), the Board found that the union could potentially offer many alternatives to downsizing, including wage reduction, modified work rules, nonpaid vacations, work reassignments, etc.

Racetrack Food Servs., Inc. & Casino Food Servs., Inc., Single Emp'r, & Unite Here, Local 274, 353 NLRB No. 76, 2008 WL 5427721 at *26 (Dec. 31, 2008).

While it is true that Del Monte did not have a duty to bargain about the closure itself, Del Monte did have a duty to bargain about the effects of the closure. By not disclosing its profit loss, Del Monte foreclosed any opportunity by ILWU to mitigate the effects of that loss and possibly forestall acceleration of the closure.

(c) Del Monte challenges HLRB's finding that states "the record is devoid of an instance of [Del Monte's] bargaining team ever advising [ILWU] of the reasons for its rejections [of ILWU's cost proposals]." In its opening brief, Del Monte states that it had limited resources and this information was enough. This is not an adequate challenge to HLRB's findings.

(d) HLRB found that ILWU relied on Del Monte's representation that the original closure date was December 2008. Del Monte does not challenge the fact that ILWU relied on this representation, but instead argues that Del Monte did not hide the closure date. While this particular instance may not in itself show bad faith, it is a part of the totality of the circumstances considered by HLRB.

(e) Del Monte argues that HLRB erred by basing its conclusion of bad faith on Del Monte's failure to fulfill promises it made during its first announcement of the closure.

7

Del Monte does not argue that it did in fact fulfill these promises, but instead argues that it did not have a duty to bargain about these issues. Because HLRB used the proper standard of totality of the circumstances, it was free to consider this matter, which was certainly part of the totality of circumstances.

(f) Del Monte argues that HLRB erred in finding that the acceleration of the closure date prejudiced ILWU. Del Monte reasons that it gave adequate notice of the decision to accelerate. HLRB held that "[t]he closing date is not necessarily . . . a subject of bargaining. But the information establishes critical and foundational and operational parameters." HLRB did not find that the decision to accelerate was conducted in bad faith, but that the lack of information about the decision to accelerate was a factor in the finding of bad faith.

Therefore,

IT IS HEREBY ORDERED that the Judgment filed on February 1, 2008 in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, November 21, 2011.

On the briefs:

Christopher S. Yeh
(Marr Jones & Wang)
for Appellants-Appellants.

Herbert R. Takahashi
Danny J. Vasconcellos
Rebecca L. Covert
(Takahashi Vasconcellos
& Covert)
for Union/Appellee-Appellee.

Valri Lei Kunimoto
for Appellee-Appellee
Hawaii Labor Relations Board.

Chief Judge

Associate Judge

Associate Judge

8